Tionna Dolin (SBN 299010)
Email: tdolin@slpattorney.com
(emailservices@slpattorney.com)
**Strategic Legal Practices, APC**
1888 Century Park East, 19th Floor
Los Angeles, CA 90067
Telephone: (310) 929-4933
Facsimile: (310) 943-3838

Attorneys for Plaintiffs
RONALD RENE CEBALLOS and GUADALUPE MARIA CEBALLOS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| RONALD RENE CEBALLOS and GUADALUPE MARIA CEBALLOS, | Case No.: |
| Plaintiffs, | Assigned to: Dept. |
| vs. | **COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS** |
| FCA US LLC; and DOES 1 through 10, inclusive, | |
| Defendants. | JURY TRIAL DEMANDED |

**COMPLAINT; JURY TRIAL DEMANDED**

Plaintiffs allege as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 because the action alleges claims pursuant to 15 U.S.C. §2310, the Magnuson-Moss Warranty Act, with a claim that exceeds the amount in controversy of $50,000, pursuant to 15 U.S.C. §2310(d)(3)(B).

2.      Furthermore, the Court has jurisdiction over this matter because there is minimal diversity as Plaintiff and Defendants are citizens of different states, with a claim that exceeds the amount in controversy of $75,000, pursuant to 28 U.S.C. § 1332.

3.      Furthermore, pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Central District of California because a substantial part of the events or omissions giving rise to the claim occurred within the judicial district.

4.      Assignment to the Southern Division of this Court is proper because all or most of the events giving rise to Plaintiff's claims, including entering into the warranty contract for and/or repair of the Subject Vehicle giving rise to this lawsuit, occurred in Orange County.

**GENERAL ALLEGATIONS**

5.      As used in this Complaint, the word "Plaintiffs" shall refer to Plaintiffs RONALD RENE CEBALLOS and GUADALUPE MARIA CEBALLOS.

6.      Plaintiffs are residents of Orange County, California.

7.      As used in this Complaint, the word "Defendant" shall refer to all Defendants named in this Complaint.

8.      Defendant FCA US LLC ("Defendant FCA") is a corporation organized and in existence under the laws of the State of Delaware and registered with the California Department of Corporations to conduct business in California. Defendant FCA's principal place of business is in the State of Michigan. At all

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

times relevant herein, Defendant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in Orange County, California.

9.     Plaintiffs are ignorant of the true names and capacities of the Defendants sued under the fictitious names DOES 1 to 10. They are sued pursuant to Code of Civil Procedure section 474.  When Plaintiffs become aware of the true names and capacities of the Defendants sued as DOES 1 to 10, Plaintiffs will amend this Complaint to state their true names and capacities.

## FACTUAL BACKGROUND

10.     On or about December 26, 2016, in California, Plaintiffs entered into a warranty contract with Defendant FCA regarding a 2017 Chrysler Pacifica vehicle identification number 2C4RC1CG7HR531811 (hereafter "Vehicle"), which was manufactured and/or distributed by Defendant FCA.

11.     The warranty contract contained various warranties, including but not limited to the bumper-bumper warranty, powertrain warranty, emission warranty, etc. A true and correct copy of the warranty contract is attached hereto as **Exhibit A**. The terms of the express warranty are described in **Exhibit A** and are incorporated herein. In addition, to the these warranties, Defendant FCA also provided Plaintiffs with a California Emission Warranty, which Plaintiffs request Defendant FCA produce as part of its discovery obligations in this case.[1]

12.     Pursuant to the Song-Beverly Consumer Warranty Act (the "Song-Beverly Act") Civil Code sections 1790, *et seq.* the Subject Vehicle constitutes "consumer goods" used primarily for family or household purposes, and Plaintiffs

_____

[1] Upon information and belief, Defendant FCA deliberately refuses to include the terms of the California emissions warranties in its main express warranty booklet so that California consumers are kept in the dark when Defendant FCA fails to comply with its warranty obligations under California's 7 years/70,000 miles emissions warranty, or other California emission warranties, including but not limited to, Low Emission Vehicles warranties (which have an even longer warranty term).

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

have used the vehicle primarily for those purposes. Plaintiffs are "buyers" of consumer goods under the Act. Defendant FCA is a "manufacturer" and/or "distributor" under the Song-Berly Act.

13.    Plaintiffs justifiably revoke acceptance of the Subject Vehicle under Civil Code, section 1794, *et seq.* by filing this Complaint and/or did so prior to filing the instant Complaint.

14.    These causes of action arise out of the warranty obligations of Defendant FCA in connection with a motor vehicle for which Defendant FCA issued a written warranty.

15.    Defects and nonconformities to warranty manifested themselves within the applicable express warranty period, including but not limited to, the electrical system, the engine, the transmission, defects causing stalling, among other defects and non-conformities.

16.    Said defects/nonconformities substantially impair the use, value, or safety of the Vehicle.

17.    Plaintiffs purchased the Subject Vehicle as manufactured with FCA's defective 9HP transmission and PCM.

18.    Plaintiffs are informed, believes, and thereon alleges that FCA knew since prior to Plaintiffs purchasing the Subject Vehicle, that the 2017 - 2020 Chrysler Pacifica vehicles equipped with a 9HP transmission are defective along with the Powertrain Control Module (PCM), including Plaintiff's 2017 Chrysler Pacifica, contained one or more defect(s) to the transmission and/or PCM which may result in stalling, shutting off, and/or loss of power, (the "Stalling Defect").

19.    Thus, the Stalling Defect is a safety concern because it severely affects the driver's ability to control the car's speed, acceleration, and deceleration. For example, these conditions make it difficult to safely merge into traffic or may cause a sudden loss of power while in motion. Even more troubling, the Stalling Defect can cause the vehicle to fail without warning, while the

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

Vehicle is moving at highway speeds.

20.     Plaintiffs are informed, believe, and thereon allege that prior to Plaintiffs acquiring the Vehicle, FCA was well aware and knew that the PCM installed in the Vehicle was defective but failed to disclose this fact to Plaintiffs at the time of sale and thereafter.

21.     Plaintiffs are informed, believe, and thereon allege that FCA acquired its knowledge of the Stalling Defect prior to Plaintiffs acquiring the Vehicle, through sources not available to consumers such as Plaintiffs, including but not limited to pre-production and post-production testing data; early consumer complaints about the Stalling Defect made directly to FCA and its network of dealers; aggregate warranty data compiled from FCA's network of dealers; testing conducted by FCA in response to these complaints; as well as warranty repair and part replacements data received by FCA from FCA's network of dealers, amongst other sources of internal information.

22.     Plaintiffs are informed, believe, and thereon allege that while FCA knew about the Stalling Defect, and its safety risks since prior to Plaintiffs purchasing the Subject Vehicle, FCA nevertheless concealed and failed to disclose the defective nature of the Vehicle and its Stalling Defect to its sales representatives and Plaintiffs at the time of sale and thereafter.  FCA omitted mention of the Stalling Defect to its consumers.

23.     Plaintiffs are reasonable consumers who interacted with sales representatives, considered FCA's advertisement, and/or other marketing materials concerning the FCA Vehicles prior to purchasing the Subject Vehicle. Had FCA revealed the Stalling Defect, Plaintiffs would have been aware of it and would not have purchased the Subject Vehicle.

## **FCA Had Exclusive Knowledge of the Stalling Defect**

**COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

24.     FCA had superior and exclusive knowledge of the Stalling Defect and knew or should have known that the defect was not known to or reasonably discoverable by Plaintiffs and before he purchased or leased the Subject Vehicle.

25.     Defendant knew or should have known, based on FCA's routine monitoring of complaints, that the 2017 Chrysler Pacifica had a dangerous defect that adversely affects their drivability. Additionally, FCA knew or should have known about the Stalling Defect through sources not available to consumers, including FCA's own aggregate pre-market data and other aggregate post-market data from FCA authorized dealers.

26.     Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had Plaintiffs known of the Stalling Defect, given the unsafe nature of the Stalling Defect. Furthermore, Plaintiffs unknowingly exposed themselves to the risk of accident, injury, and/or liability to others as a result of the nature or the Stalling Defect which can lead to loss of power while driving at highway speeds, stalling, loss of control, and other impairments to driveability. Plaintiffs are reasonable consumers who expected the Subject Vehicle to be safe and free of defects and that FCA would not sell or lease vehicles with known safety-related defects, such as the Stalling Defect, and will disclose any such defects to its consumers when it learns of them.

27.     While it has been fully aware of the Stalling Defect, FCA actively concealed the existence and nature of the alleged defect from Plaintiffs at the time of purchase, repair, and thereafter.

28.     FCA was inundated with complaints regarding the Stalling Defect but rather than repair the problem under warranty, FCA dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the defect.

29.     On or about May 11, 2016, FCA issued TSB 18-057-16 to address customer concerns regarding illumination of the malfunction indicator lamp

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

("MIL"). The TSB calls for dealers to reprogram the PCM with the latest available software. This TSB was revised on June 17, 2016 by TSB 18-057-16 REV.A to address the same issue.

30.     In or around August 2017, FCA issued Safety Recall T23 for vehicles to reprogram the PCM with new software to cure a safety-related defect with the EGR valve.

31.     The defect could cause the EGR valve to be operating with an aggressive seating velocity, which may damage the EGR valve.

32.     The Stalling Defect, which may result in vehicles shutting off, stalling without warning, loss of engine timing, loss of crankshaft position synchronization, and/or loss of power, was not cured by TSB 18-057-16 REV. A and/or Safety Recall T23.

33.     On January 11, 2018, FCA released two Safety Recalls to resolve the stalling issue experienced by customers, Safety Recall U01 / NHTSA 18V-049 and Safety Recall U02 / NHTSA 18V-048.

34.     Safety Recall U01 / NHTSA 18V-049 was issued to address customer concerns regarding an engine stall without prior warning. The Recall states that, "[i]n the majority of cases the stalling occurs at low speed, while decelerating, while at idle or while negotiating a turn. Engine stalling results in a loss of motive power, which can cause vehicle crash without prior warning." This Recall is FCA's continued attempt to address ongoing stalling issues with repackaged T23 software updates.

35.     Safety Recall U02 / NHTSA 18V-049 was issued to address customer concerns regarding an engine stall and/or a potential engine compartment fire. The Recall states that, '[e]ither of these conditions could increase the likelihood of occupant injury, and an engine stall can cause a vehicle crash without prior warning." This Recall is also another repackaged version of the existing T23 software update.

36.   Neither Recalls, nor the T23 software update, have eliminated the Stalling Defect.

37.   FCA admits in Safety Recall U01 that, at best, the Recall simply provides software that makes vehicles "less susceptible" to a loss of engine timing (crankshaft position synchronization).

38.   FCA has still not modified any of the defective components that cause the symptoms associated with the Stalling Defect.

39.   Under the Song-Beverly Act, Defendant FCA had an affirmative duty to promptly offer to repurchase or replace the Subject Vehicle at the time if failed to conform the Subject Vehicle to the terms of the express warranty after a reasonable number of repair attempts.[2]

40.   Defendant FCA US LLC has failed to either promptly replace the Subject Vehicle or to promptly make restitution in accordance with the Song-Beverly Act.

41.   Under the Act, Plaintiffs are entitled to reimbursement of the price paid for the vehicle less that amount directly attributable to use by the Plaintiffs prior to the first presentation to an authorized repair facility for a nonconformity.

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

[2] "A manufacturer's duty to repurchase a vehicle does not depend on a consumer's request, but instead arises as soon as the manufacturer fails to comply with the warranty within a reasonable time. (*Krotin v. Porsche Cars North America, Inc.* (1995) 38 Cal.App.4th 294, 301-302, 45 Cal.Rptr.2d 10.) Chrysler performed the bridge operation on Santana's vehicle in August 2014 with 30,262 miles on the odometer—within the three-year, 36,000 mile warranty. The internal e-mails demonstrating Chrysler's awareness of the safety risks inherent in the bridge operation were sent in September 2013, and thus Chrysler was well aware of the problem when it performed the bridge operation on Santana's vehicle. Thus, Chrysler's duty to repurchase or provide restitution arose prior to the expiration of the three-year, 36,000 mile warranty. Moreover, although we do not have the actual five-year, 100,000 mile power train warranty in our record, Santana's expert testified that the no-start/stalling issues Santana experienced were within the scope of the power train warranty, which was still active when Santana requested repurchase in approximately January 2016, at 44,467 miles. Thus the premise of Chrysler's argument—that Santana's request for repurchase was outside the relevant warranty—is not only irrelevant, but wrong." *Santana v. FCA US, LLC,* 56 Cal. App. 5th 334, 270 Cal. Rptr. 3d 335 (2020).

42.   Plaintiffs are entitled to replacement or reimbursement pursuant to Civil Code, section 1794, et seq. Plaintiffs are entitled to rescission of the contract pursuant to Civil Code, section 1794, et seq. and Commercial Code, section 2711.

43.   Plaintiffs are entitled to recover any "cover" damages under Commercial Code, sections 2711, 2712, and Civil Code, section 1794, et seq.

44.   Plaintiffs are entitled to recover all incidental and consequential damages pursuant to 1794 et seq. and Commercial Code, sections 2711, 2712, and 2713 et seq.

45.   Plaintiffs suffered damages in a sum to be proven at trial in an amount that is not less than $25,001.00.

46.   Plaintiffs are entitled to all incidental, consequential, and general damages resulting from Defendants' failure to comply with its obligations under the Song-Beverly Act.

47.   Plaintiffs discovered Defendants' wrongful conduct alleged herein shortly before the filing of the complaint, when Plaintiffs requested a buyback and/or restitution of the Subject Vehicle from Defendant FCA as the Vehicle continued to exhibit symptoms of defects following Defendant FCA's unsuccessful attempts to repair them. However, Defendant FCA failed to provide restitution pursuant to the Song-Beverly Consumer Warranty Act and/or Magnuson-Moss Warranty Act.

48.   Under the Song-Beverly Act, Defendant FCA had an affirmative duty to promptly offer to repurchase or replace the Subject Vehicle at the time if failed to conform the Subject Vehicle to the terms of the express warranty after a reasonable number of repair attempts.[3]

---

[3] "A manufacturer's duty to repurchase a vehicle does not depend on a consumer's request, but instead arises as soon as the manufacturer fails to comply with the warranty within a reasonable time. (*Krotin v. Porsche Cars North America, Inc.* (1995) 38 Cal.App.4th 294, 301-302, 45 Cal.Rptr.2d 10.) Chrysler performed the bridge operation on Santana's vehicle in August 2014 with 30,262 miles on the odometer—within the three-year, 36,000 mile warranty. The internal e-mails demonstrating Chrysler's awareness of the safety risks inherent in the bridge operation were sent in September 2013, and thus Chrysler was well aware

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

49.     Defendant FCA has failed to either promptly replace the Subject Vehicle or to promptly make restitution in accordance with the Song-Beverly Act.

50.     Under the Song-Beverly Act, Plaintiffs are entitled to reimbursement of the price paid for the vehicle less that amount directly attributable to use by the Plaintiffs prior to the first presentation to an authorized repair facility for a nonconformity.

51.     Plaintiffs are entitled to replacement or reimbursement pursuant to Civil Code, section 1794, et seq. Plaintiffs are entitled to rescission of the contract pursuant to Civil Code, section 1794, et seq. and Commercial Code, section 2711.

52.     Plaintiffs are entitled to recover any "cover" damages under Commercial Code, sections 2711, 2712, and Civil Code, section 1794, et seq.

53.     Plaintiffs are entitled to recover all incidental and consequential damages pursuant to 1794 et seq. and Commercial Code, sections 2711, 2712, and 2713 et seq.

54.     Plaintiffs suffered damages in a sum to be proven at trial in an amount that exceeds $75,000.00.

55.     Plaintiffs are entitled to all incidental, consequential, and general damages resulting from Defendants' failure to comply with its obligations under the Song-Beverly Act and/or Magnuson-Moss Warranty Act.

## TOLLING OF THE STATUTES OF LIMITATION

**A.     Class Action Tolling**

---

of the problem when it performed the bridge operation on Santana's vehicle. Thus, Chrysler's duty to repurchase or provide restitution arose prior to the expiration of the three-year, 36,000 mile warranty. Moreover, although we do not have the actual five-year, 100,000 mile power train warranty in our record, Santana's expert testified that the no-start/stalling issues Santana experienced were within the scope of the power train warranty, which was still active when Santana requested repurchase in approximately January 2016, at 44,467 miles. Thus the premise of Chrysler's argument—that Santana's request for repurchase was outside the relevant warranty—is not only irrelevant, but wrong." *Santana v. FCA US, LLC,* 56 Cal. App. 5th 334, 270 Cal. Rptr. 3d 335 (2020).

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

56.     Under the tolling rule articulated in *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974) ("*American Pipe*"), the filing of a class action lawsuit in federal court tolls the statute of limitations for the claims of unnamed class members until the class certification issue is resolved.  In applying *American Pipe* tolling to California cases, the California Supreme Court summarized the tolling rule derived from *American Pipe* and stated that the statute of limitations is tolled from the time of commencement of the suit to the time of denial of certification for all purported members of the class.  *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1119 (1988).  Tolling lasts from the day a class claim is asserted until the day the suit is conclusively not a class action.  *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1464 (2015).

57.     The tolling of Plaintiffs' individual statute of limitations encourages the protection of efficiency and economy in litigation as promoted by the class action devise, so that putative class members would not find it necessary to seek to intervene or to join individually because of fear the class might never be certified or putative class members may subsequently seek to request exclusion.

**B.    Discovery Rule Tolling**

58.     Making it even more difficult to discover that the Subject Vehicle's engine suffered from a safety defect was Defendants' issuance of various TSBs and Recalls purporting to be able to fix various symptoms of the defects.

59.     As a result of the foregoing, Plaintiffs did not become suspicious of Defendant's concealment of the latent defects and its inability to repair it until shortly before the filing of the complaint, when the issue persisted following Defendant's representations that the Vehicle was repaired, and thus contacted Defendant directly.

60.     Plaintiffs always acted diligently in presenting the Subject Vehicle for repairs and following the directives of Defendant's authorized repair personnel.

61.     Defendants were under a continuous duty to disclose to Plaintiffs the true character, quality, and nature of the Defendant Vehicles' suffering from the Defects, and the inevitable repairs, costs, time, and monetary damage resulting from the Defects. Due in part to Defendant's failure to do so, Plaintiffs were unable to discover Defendant's wrongful conduct alleged herein until the issues persisted following Defendants attempts to conform the Vehicle to its warranties.

62.     Plaintiffs discovered Defendants' wrongful conduct alleged herein shortly before the filing of the complaint, when Plaintiffs requested a buyback and/or restitution of the Subject Vehicle from Defendant FCA as the Vehicle continued to exhibit symptoms of defects following Defendant FCA's unsuccessful attempts to repair them. However, Defendant FCA failed to provide restitution pursuant to the Song-Beverly Consumer Warranty Act and/or Magnuson-Moss Warranty Act.

63.     Plaintiffs incorporates herein the portions of Plaintiffs' repair history set forth above, by reference.

**C.      The Repair Doctrine**

64.     The statute of limitations is tolled by various unsuccessful attempts to repair the vehicle.[4]

65.     Additionally, the limitations period for warranty claims is tolled against a defendant whenever that Defendant claims that the defect is susceptible to repair and attempts to repair the defect.[5]

_____

[4] See *Aced v. Hobbs–Sesack Plumbing Co.*, 55 Cal.2d 573, 585 (1961) ("The statute of limitations is tolled where one who has breached a warranty claims that the defect can be repaired and attempts to make repairs.") and *A&B Painting & Drywall, Inc. v. Sup. Ct.*, 25 Cal.App.4th 349, 355 (2002) ("Tolling during a period of repairs rests upon the same basis as does an estoppel to assert the statute of limitations, i.e., reliance by the plaintiff upon the words or actions of the defendant that repairs will be made.").

[5] "Tolling during a period of repairs generally rests upon the same legal basis as does an estoppel to assert the statute of limitations, i.e., reliance by the plaintiff on the words or actions of the defendant that repairs will be made." *Cardinal Health 301, Inc.*, *supra*, 169 Cal.App.4th at pp. 133–34.

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430 LOS ANGELES, CA 90067

66.     Here, Defendant undertook to perform various defects repair measures in the form of TSBs and recalls. During the time in which Defendant represented to Plaintiffs that the Vehicle was fixable and attempted to fix it, the warranty period may thus have been tolled.

67.     Plaintiffs discovered Defendants' wrongful conduct alleged herein shortly before the filing of the complaint, when Plaintiffs requested a buyback and/or restitution of the Subject Vehicle from Defendant FCA as the Vehicle continued to exhibit symptoms of defects following Defendant FCA's unsuccessful attempts to repair them. However, Defendant FCA failed to provide restitution pursuant to the Song-Beverly Consumer Warranty Act and/or Magnuson-Moss Warranty Act.

## FIRST CAUSE OF ACTION
## BY PLAINTIFFS AGAINST DEFENDANT FCA
## VIOLATION OF SUBDIVISION (D) OF CIVIL CODE § 1793.2

68.     Plaintiffs incorporate by reference the allegations contained in the paragraphs set forth above.

69.     Defendant FCA and its representatives in this state have been unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of opportunities.  Despite this fact, Defendant failed to promptly replace the Vehicle or make restitution to Plaintiffs as required by Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2).

70.     Plaintiffs have been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2), and therefore brings this cause of action pursuant to Civil Code section 1794.

71.     Defendant's failure to comply with its obligations under Civil Code section 1793.2, subdivision (d) was willful, in that Defendant and its representative

were aware that they were unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet Defendant failed and refused to promptly replace the Vehicle or make restitution. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiffs' actual damages pursuant to Civil Code section 1794, subdivision (c).

72.    Defendant does not maintain a qualified third-party dispute resolution process which substantially complies with Civil Code section 1793.22. Accordingly, Plaintiffs are entitled to a civil penalty of two times Plaintiffs' actual damages pursuant to Civil Code section 1794, subdivision (e).

73.    Plaintiffs seek civil penalties pursuant to section 1794, subdivisions (c), and (e) in the alternative and does not seek to cumulate civil penalties, as provided in Civil Code section 1794, subdivision (f).

**SECOND CAUSE OF ACTION**

**BY PLAINTIFFS AGAINST DEFENDANT FCA**

**VIOLATION OF SUBDIVISION (B) OF CIVIL CODE § 1793.2**

74.    Plaintiffs incorporate by reference the allegations contained in the paragraphs set forth above.

75.    Although Plaintiffs presented the Vehicle to Defendant's representative in this state, Defendant and its representative failed to commence the service or repairs within a reasonable time and failed to service or repair the Vehicle so as to conform to the applicable warranties within 30 days, in violation of Civil Code section 1793.2, subdivision (b).  Plaintiffs did not extend the time for completion of repairs beyond the 30-day requirement.

76.    Plaintiffs have been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2(b), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

77.    Plaintiffs have rightfully rejected and/or justifiably revoked acceptance of the Vehicle, and has exercised a right to request a buyback.  By

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

serving this Complaint, Plaintiffs do so again.  Accordingly, Plaintiffs seek the remedies provided in California Civil Code section 1794(b)(1), including the entire value of the Vehicle.  In the alternative, Plaintiffs seek the remedies set forth in California Civil Code section 1794(b)(2), including the diminution in value of the Vehicle resulting from its defects.  Plaintiffs believes that, at the present time, the Vehicle's value is *de minimis*.

78.    Defendant FCA'S failure to comply with its obligations under Civil Code section 1793.2(b) was willful, in that Defendant FCA and its representative were aware that they were obligated to service or repair the Vehicle to conform to the applicable express warranties within 30 days, yet they failed to do so. Accordingly, Plaintiffs are entitled to a civil penalty of two times Plaintiffs' actual damages pursuant to Civil Code section 1794(c).

### THIRD CAUSE OF ACTION
### BY PLAINTIFFS AGAINST DEFENDANT FCA
### VIOLATION OF SUBDIVISION (A)(3) OF CIVIL CODE § 1793.2

79.    Plaintiffs incorporate by reference the allegations contained in paragraphs set forth above.

80.    In violation of Civil Code section 1793.2, subdivision (a)(3), Defendant failed to make available to its authorized service and repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period.  Plaintiffs have been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2(a)(3), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

81.    Defendant's failure to comply with its obligations under Civil Code section 1793.2, subdivision (a)(3) was wilful, in that Defendant knew of its obligation to provide literature and replacement parts sufficient to allow its repair facilities to effect repairs during the warranty period, yet Defendant failed to take any action to correct its failure to comply with the law. Accordingly, Plaintiffs are

1  entitled to a civil penalty of two times Plaintiffs' actual damages; pursuant to Civil

2  Code section 1794(c).

### FOURTH CAUSE OF ACTION

### BY PLAINTIFFS AGAINST DEFENDANT FCA

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (CIVIL CODE, § 1791.1; § 1794; § 1795.5)

7  82.    Plaintiffs incorporate by reference the allegations contained in the

8  paragraphs set forth above.

9  83.    Pursuant to Civil Code section 1792, the sale of the Vehicle was

10  accompanied by Defendant's implied warranty of merchantability.  Pursuant to

11  Civil Code section 1791.1, the duration of the implied warranty is coextensive in

12  duration with the duration of the express written warranty provided by Defendant,

13  except that the duration is not to exceed one-year.

14  84.    Pursuant to Civil Code section 1791.1 (a), the implied warranty of

15  merchantability means and includes that the Vehicle will comply with each of the

16  following requirements:  (1) The Vehicle will pass without objection in the trade

17  under the warranty contract description; (2) The Vehicle is fit for the ordinary

18  purposes for which such goods are used; (3) The Vehicle is adequately contained,

19  packaged, and labelled; (4) The Vehicle will conform to the promises or

20  affirmations of fact made on the container or label.

21  85.    At the time of entering into the warranty contract, or within one-year

22  thereafter, the Vehicle contained or developed the defects set forth above. The

23  existence of each of these defects constitutes a breach of the implied warranty

24  because the Vehicle (1) does not pass without objection in the trade under the

25  warranty contract description, (2) is not fit for the ordinary purposes for which

26  such goods are used, (3) is not adequately contained, packaged, and labelled, and

27  (4) does not conform to the promises or affirmations of fact made on the container

28  or label.

Strategic Legal Practices, APC
1840 Century Park East, Suite 430, Los Angeles, CA 90067

86.     Plaintiffs have been damaged by Defendant's failure to comply with its obligations under the implied warranty, and therefore brings this Cause of Action pursuant to Civil Code section 1794.

## FIFTH CAUSE OF ACTION
## BY PLAINTIFFS AGAINST DEFENDANT FCA
### (Fraudulent Inducement - Concealment)

87.     Plaintiffs incorporate by reference the allegations contained in the paragraphs set forth above.

88.     FCA committed fraud by allowing the Subject Vehicle to be sold to Plaintiffs without disclosing that the Subject Vehicle and its transmission and PCM was defective which can cause loss of engine timing and result in shutting off or stalling without warning. It can also result in a total loss of power, including power steering, which can prevent acceleration, deceleration, and steering and significantly impair driver control. Faults from the 9HP transmission, which communicates with the PCM, can also cause the Subject Vehicle to lose power.

89.     Indeed, Plaintiffs allege that prior to the sale of the Subject Vehicle to Plaintiffs, FCA knew that the Vehicle and its transmission suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

90.     FCA was under a duty to Plaintiffs to disclose the defective nature of the Vehicle and its transmission, its safety consequences and/or the associated repair costs because:

a.     Plaintiffs are informed, believe, and thereon allege that FCA acquired its knowledge of the Stalling Defect and its potential consequences prior to Plaintiffs acquiring the Vehicle, through sources not available to consumers such as Plaintiffs, including but not limited to pre-production testing data, early consumer complaints about the Stalling Defect made directly to FCA and its network of dealers, aggregate

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

warranty data compiled from FCA's network of dealers, testing conducted by FCA in response to these complaints, as well as warranty repair and part replacements data received by FCA from FCA's network of dealers, amongst other sources of internal information;

b.      FCA was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with 9HP transmission; and

c.      Plaintiffs could not reasonably have been expected to learn or discover of the Vehicle's Stalling Defect and its potential consequences until well after Plaintiffs purchased the Vehicle.

91.     In failing to disclose the defects in the Vehicle's transmission (and PCM), FCA has knowingly and intentionally concealed material facts and breached its duty not to do so.

92.     The facts concealed or not disclosed by FCA to Plaintiffs are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Vehicle.  Had Plaintiffs known that the Vehicle and its transmission and PCM were defective at the time of sale, they would not have purchased the Vehicle.

93.     Plaintiffs are reasonable consumers who interacted with FCA's sales representatives and reviewed materials disseminated by FCA concerning FCA Vehicles prior to purchasing the Subject Vehicle. Had Defendant disclosed the Stalling Defect, a safety hazard, to its sales representatives and/or the consumer public, Plaintiffs would have been aware of it and would not have purchased the Subject Vehicle.

94.     Plaintiffs were harmed by purchasing a vehicle that Plaintiffs would not have leased and/or purchased had Plaintiffs known the true facts about the Stalling Defect.

**COMPLAINT; JURY TRIAL DEMANDED**

95.     Furthermore, Plaintiffs unknowingly exposed himself to the risk of liability, accident and injury as a result of Defendant's fraudulent concealment of the Stalling Defect.

**PRAYER**

PLAINTIFFS PRAY for judgment against Defendant as follows:

a.     For general, special and actual damages according to proof;

b.     For restitution;

c.     For any consequential and incidental damages;

d.     For revocation of acceptance of the Subject Vehicle, rescission, reimbursement and/or restitution of all monies expended;

e.     For diminution in value;

f.     For a civil penalty in the amount of two times Plaintiffs' actual damages pursuant to Civil Code section 1794, subdivision (c) or (e);

g.     For prejudgment interest at the legal rate;

h.     For punitive damages;

i.     For costs of the suit and Plaintiffs' reasonable attorneys' fees pursuant to Civil Code section 1794, subdivision (d);

j.     For such other relief as the Court may deem proper.

1

## <u>**DEMAND FOR JURY TRIAL**</u>

2

Plaintiffs hereby demand a jury trial on all causes of action asserted herein.

3

4

5

Dated: June 22, 2022           STRATEGIC LEGAL PRACTICES, APC

6

7

BY: _____/s/ Tionna Dolin_____

8

TIONNA DOLIN
Attorneys for Plaintiffs,
RONALD RENE CEBALLOS and
GUADALUPE MARIA CEBALLOS

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067